IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAUL MOLINA ROMAN, ET AL.         :

                                  :

        v.                        :    Civil Action No. DKC 12-2821

                                  :

GAUPOS III, INC., ET AL.          :

                                  :

## MEMORANDUM OPINION

Presently pending and ready for review in this wage and hour law case are two motions filed by Defendants: (1) a motion to dismiss all claims against Defendants Hector Rincon; Hector Rincon, Jr.; Guapo's Bethesda, Inc.; Guapo's Restaurant, Inc.; Guapo's of Fair Lakes, Inc.; and Guapos of Virginia, Inc. (ECF No. 27),[1] and (2) a motion for a protective order. (ECF No. 19). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part. Defendants' motion for a protective order will be granted.

## I. Background

The following facts are alleged in the second amended complaint. (ECF No. 25). There are five Guapo's restaurants, each separately incorporated and each a Defendant in this case.

---

[1] Defendants Guapos III, Inc. and Fidel Rincon did not move to dismiss the claims against them.

Plaintiffs are three individuals who either were or are employed currently as busboys or waiters at the Guapo's restaurant in Gaithersburg, Maryland, which is incorporated as "Guapos III, Inc." ("Gaithersburg Guapo's"). (*Id.* ¶¶ 49-51). Plaintiffs contend that they worked between forty (40) and seventy-seven (77) hours a week at the Gaithersburg Guapo's. (*Id.* ¶¶ 49-51). They do not allege that they have worked at any other Guapo's. They allege that Guapo's paid the Plaintiff waiters $2.63 per hour for the first forty hours per week worked, which was subsequently amended to $3.63 per hour on or about November 1, 2012. Plaintiff busboys were paid $3.85 per hour for the first forty weeks worked. Plaintiffs allege that they were not paid any rate after the first forty hours. (*Id.* ¶¶ 52-53). Additionally, Plaintiffs allege that Defendants took a "tip credit" from their wages without providing the proper notice. (*Id.* ¶¶ 54-55).[2] Plaintiffs allege that these actions were taken by Defendants intentionally, willfully, and in bad faith. (*Id.* ¶ 58).

Plaintiffs also name three individuals as Defendants: Hector Rincon, Hector Rincon, Jr., and Fidel Rincon. Plaintiffs allege that Hector Rincon is the President and primary owner of all Guapo's. (Id. ¶ 10). Plaintiffs allege, on information and

---

[2] A "tip credit" occurs when the tips earned by an employee is credited against the employer's obligation to pay the employee the minimum wage.

belief that Mr. Rincon, as the President and primary owner of all Guapo's, had the power to: hire, fire, suspend, and otherwise discipline Plaintiffs; control Plaintiffs' work schedule; and set and determine or had the power to set the rate and method of Plaintiffs' pay. (*Id.* ¶ 10). Plaintiffs allege, on information and belief, that Defendant Hector Rincon, Jr. was the co-owner and manager of the Gaithersburg Guapo's. Mr. Rincon, Jr. allegedly had the same powers as his father in regards to the Gaithersburg Guapo's. (*Id.* ¶ 11). Plaintiffs allege that Defendant Fidel Rincon was the manager of the Gaithersburg Guapo's. Fidel Rincon allegedly was in charge of the day-to-day operations at the Gaithersburg Guapo's, to include: supervising Plaintiffs; setting and controlling employees' work schedules; and setting and determining employees' rate and method of pay. (*Id.* ¶ 12).

Plaintiffs contend that, despite their separate incorporation, all five Guapo's corporations are run as a "single enterprise" that is headed by Hector Rincon with assistance from various Rincon family members. The complaint alleges that all Guapo's serve substantially the same food and beverage under a common name and logo; advertise on a common website; use a common bookkeeper, payroll system, and employment model; and are represented by a common defense counsel. (*Id.* ¶¶ 19, 22, 40).

## II.  Procedural History

On March 11, 2013, Plaintiffs filed their second amended complaint.  (ECF No. 25).  Plaintiffs contend that Defendants willfully, intentionally, and in bad faith failed to pay them the minimum wage and overtime for hours worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. §§ 3-401 *et seq.*  They bring an FLSA collective action on behalf of themselves and "all current and former 'tipped employees' of Defendants . . . employed during the period September 20, 2009 through the present" who were subject to Defendants' policy of not compensating employees the minimum wage and not compensating them at the overtime rate for time worked beyond forty (40) hours a week.  (*Id.* ¶ 42).  Plaintiffs also bring a class action for Defendants' MWHL violations on behalf of Defendants' "tipped employees" employed in Maryland. (*Id.* ¶¶ 30-39).  All Defendants except Fidel Rincon and Guapos III, Inc., moved to dismiss the claims against them for lack of subject matter jurisdiction and failure to state a claim.  (ECF No. 27).  Plaintiffs opposed the motion (ECF No. 29), and Defendants replied.  (ECF No. 32).  Defendants have also filed a motion for a protective order to preclude Plaintiffs from taking a deposition of Guapo's Bethesda, Inc.; Guapo's Restaurant, Inc.; Guapo's of Fair Lakes, Inc.; and Guapo's of Virginia, Inc.

(ECF No. 19).  Plaintiffs opposed the motion (ECF No. 26), and Defendants replied.  (ECF No. 29).

## III. Standard of Review

The arguments raised by Defendants in the motion to dismiss – lack of subject matter jurisdiction and failure to state a claim – implicate different standards of review.  First, the motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'"  *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (*quoting* 2 James Wm. Moore, et al., Moore's Federal Practice § 12.30[1] (3d ed. 1998)).  The Plaintiff always bears the burden of proving that subject matter jurisdiction properly exists in federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans,* 166 F.3d at 647. The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is

entitled to prevail as a matter of law." *Richmond,* 945 F.2d at 768.

Second, Defendants' arguments that the complaint fails to state a plausible claim of relief are governed by Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal

allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## IV. Analysis

Defendants contend that Plaintiffs have failed to establish subject matter jurisdiction **because their complaint fails** sufficiently **to** allege that Defendants were Plaintiffs' "employer" for purposes of the FLSA and MWHL. Plaintiffs respond that, despite the separate incorporation of each Guapo's restaurant, they have made sufficient allegations of common ownership and practices to constitute a "single employer" for FLSA purposes. Plaintiffs further contend that Hector Rincon and Hector Rincon, Jr. controlled enough of the characteristics of Plaintiffs' employment to constitute an "employer." For the reasons that follow, the court will grant the motion to dismiss for Defendants Guapos Bethesda, Inc.; Guapo's Restaurant, Inc.; Guapo's of Fair Lakes, Inc.; and Guapo's Virginia, Inc. ("Corporate Defendants"). The court will deny the motion to dismiss for Defendants Hector Rincon and Hector Rincon, Jr. ("Individual Defendants").

## A.    Corporate Defendants

The FLSA mandates payment of a minimum wage for covered employees and payment at the overtime rate for each hour worked in excess of forty per week. *See Schultz v. Capital Intern. Sec. Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (*citing* 29 U.S.C. §§ 206(a)(1), 207(a)(1)). The MWHL similarly requires that "employers pay the applicable minimum wage to their employees and, in [§§ 3-415 and 3-420 of the Labor and Employment Article], that they pay an overtime wage of at least 1.5 times the usual hourly wage for each hour over 40 that the employee works during one workweek." *Friolo v. Frankel,* 373 Md. 501, 513 (2003). Indeed, "[t]he requirements under the MWHL mirror those of the federal law; as such, Plaintiffs' claim under the MWHL stands or falls on the success of their claim under the FLSA." *Turner v. Human Genome Science, Inc.,* 292 F.Supp.2d 738, 744 (D.Md. 2003).

As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing under Article III of the Constitution. *McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010). As the United States Court of Appeals for the Fourth Circuit explained in *McBurney*:

> The irreducible constitutional minimum of standing requires (1) an injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; (2) causation – a fairly traceable connection between the plaintiff's

> injury and the complained-of conduct of the defendant;
> and (3) redressability – a likelihood that the
> requested relief will redress the alleged injury.

616 F.3d at 402 (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (quotation marks omitted). Plaintiffs have clearly alleged a sufficient injury-in-fact: the failure properly to be compensated for hours worked. At issue is whether those injuries can be traced to the conduct of the Corporate Defendants and could be redressed by a favorable decision. Neither party disputes that liability in the FLSA context requires the existence of an employer-employee relationship. *See* 29 U.S.C. § 206(a) ("Every employer shall pay to each of his employees . . . wages at the following rates); 29 U.S.C. § 207(a) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess . . . at a rate not less than one and one-half times the regular rate at which he is employed."). Therefore, Plaintiffs' injuries are only traceable to, and redressable by, those who employed them.

The Act defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "employee," in turn, is defined as "any individual employed by an employer," *id.* § 203(e)(1), and "employ" means "to suffer or permit to work."

*Id.* § 203(g). Consistent with these broad definitions, "[t]he Supreme Court has instructed courts to construe the terms 'employer' and 'employee' expansively under the FLSA." *See Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 768 (D.Md. 2008) (*citing Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *Rutherford Food Corp.*, 331 U.S. 722, 730 (1947)).

"Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA." *Schultz*, 466 F.3d at 305. Pursuant to 29 C.F.R. § 791.2(b):

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
>> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;
>>
>> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>>
>> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

(footnotes omitted).

Where the alleged relationship does not fit readily into one of these three examples, courts are to consider the

"economic realities" of the relationship between the employee and the putative employer. *Schultz*, 466 F.3d at 304. In examining the "economic realities," the Fourth Circuit has suggested that courts in this circuit look to other tests derived from other circuits. *See Schultz*, 466 F.3d at 306 n.2 (advising courts that it may be useful to consider the factors listed in *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), and *Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003) to determine whether a joint employment relationship exists within the meaning of the Act and the regulation).

To that end, courts in this district have largely applied some variation of the following four factors laid out in *Bonnette*: (1) authority to hire and fire employees; (2) authority to supervise and control work schedules or employment conditions; (3) authority to determine the rate and method of payment; and (4) maintenance of employment records. *See, e.g.*, *Caseres v. S&R Mgmt. Co., LLC*, No. 12-cv-1358-AW, 2012 WL 5250561, at *3 (D.Md. Oct. 24, 2012); *Khalil v. Subway at Arundel Mills Office Park*, *Inc.*, No. CCB-09-158, 2011 WL 231793, at *2 (D.Md. Jan. 24, 2011); *Jacobson v. Comcast Corp.*, 740 F.Supp.2d 683, 689-92 (D.Md. 2010); *Jackson v. Mayor and City Council of Baltimore City*, No. JFM-08-3103, 2009 WL 2060073, at **3-7 (D.Md. July 14, 2009). While these factors are useful in

examining the question, "the determination of joint-employment must be based upon the circumstances of the whole activity." *Quinteros*, 532 F.Supp.2d at 775 (*quoting Bonnette*, 704 F.2d at 1470) (quotation marks omitted).

Plaintiffs make no allegation that they worked at any Guapo's but the Gaithersburg Guapo's, nor that these other Guapo's corporations had any authority over their employment conditions, rate and method of payment, or employment records. Plaintiffs allege that "[n]otwithstanding that each 'Guapo's' restaurant location is a separate legal entity, the operations of each 'Guapo's' restaurant is centrally and commonly controlled and operated as a close-[k]nit single family business." (*Id.* ¶ 15). Plaintiffs further allege that all Guapo's restaurants share common characteristics, such as substantially similar food and beverage; a common logo, website, bookkeeper, payroll system, and defense counsel; and similar corporate officers, all ultimately reporting to the family patriarch, Defendant Hector Rincon. (ECF No. 25 ¶¶ 19-22, 40-41). Plaintiffs argue, therefore, that the multiple Guapo's corporations are similar enough that they collectively operate as a "single enterprise employer," thereby making all Guapo's restaurants the "employer" of Plaintiffs and jointly and severally liable for all FLSA and MWHL violations. (ECF No. 25 ¶¶ 13, 24). To support their contention of the existence of a

"single enterprise employer" in the FLSA context, Plaintiffs provide numerous case citations in their opposition to Defendants' motion to dismiss. (ECF No. 29). They argue that these cases demonstrate that "single integrated enterprise" is a valid doctrine of FLSA liability, separate from the "joint employer" doctrine articulated at 29 C.F.R. § 791.2.

Unfortunately for Plaintiffs, most of the cases they cite as support for their position concern who is an "employer" for purposes of other employment laws, such as Title VII, the National Labor Relations Act ("NLRA"), or the Family Medical Leave Act ("FMLA"). *See Vance v. NLRB*, 71 F.3d 486 (4th Cir. 1995) (NLRA); *Thomas v. BET Sound-Stage Restaurant/Brettco, Inc.*, 61 F.Supp.2d 448 (D.Md. 1999) (Title VII); *Glunt v. GES Exposition Servs.*, 123 F.Supp.2d 847 (D.Md. 2000) (FMLA). None of these cases are interpreting the FLSA, and Plaintiffs are incorrect to argue that what is good for the Title VII goose is good for the FLSA gander. *See Arculeo v. On-Site*, 425 F.3d 193, 197 (2[d] Cir. 2005) ("Notwithstanding the same label and some core similarities between ['single integrated employer' and 'joint employer'], the doctrines might differ significantly in different contexts."). As discussed above, FLSA liability is predicated on an employer-employee relationship. Plaintiffs must allege in their complaint sufficient facts that each of the other Guapo's corporations is their employer, either singularly

13

or jointly with the Gaithersburg Guapo's. They have failed to do this, and even acknowledge in their complaint that they have only ever worked for the Gaithersburg Guapo's.

Plaintiffs also cite to a handful of cases that have applied the "single integrated enterprise" theory of liability in the FLSA context as a means of including employers who did not employ the plaintiff. Some of these cases can be distinguished. Two involve the relationship between a parent and subsidiary, which does not describe the situation between Guapo's Gaithersburg and the other Guapo's corporations. *See Lindberg v. UHS of Lakeside, LLC*, 761 F.Supp.2d 752 (W.D.Tenn. 2011); *Takacs v. Hahn Auto. Corp.*, No. C-3-95-404, 1999 WL 33117265 (S.D.Ohio Jan. 4, 1999). Furthermore, in such a situation, the widely adopted *Bonnette* economic realities test would be more appropriate to analyze whether the parent company was an "employer." *See, e.g.*, *In re Enterprise Rent-a-Car Wage & Hour Employment Practices Litigation*, 683 F.3d 462, 468-70 (3[d] Cir. 2012).

There are four cases cited by Plaintiffs that have allowed a plaintiff to hold a defendant liable for FLSA violations - despite the fact that the defendant was in no way plaintiff's employer - because the defendant was part of what was variously called a "single enterprise," "single integrated enterprise," or "single employer." *Jackson v. Art of Life, Inc.*, 836 F.Supp.2d

226 (E.D.Pa 2011); *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74 (E.D.N.Y. 2011); *Anderson v. Theriault Tree Harvesting*, No. 08-330-B-W, 2010 WL 323530 (D.Me Jan. 20, 2010); *Prendergast v. Fundamental Long Term Care Holdings, LLC*, 2009 U.S. Dist. LEXIS 130695 (D.NM Aug. 13, 2009). These cases were also not applying established concepts of FLSA liability, but instead transferring concepts from the contexts of labor relations and employment discrimination to the FLSA's employer-employee relationship. These cases are not binding and Plaintiffs have not provided, nor has the court uncovered, one federal appellate case applying the "single integrated enterprise" concept to determine the scope of FLSA liability. Instead, every circuit has applied some variation of the *Bonnette* test, which correctly evaluates the relationship between employee and alleged employer, not between employer and non-employer.[3] This court elects to follow that well-worn path.

*Cavallaro v. UMass Memorial Health Care, Inc.*, a recent case from the United States District Court for the District of Massachusetts, is similar to the facts before the court. No. 09-40152-FDS, 2013 WL 360405 (D.Mass. Jan. 28, 2013). Plaintiff

---

[3] While the FLSA does extend coverage to "enterprises," 29 U.S.C. §203(r), "the finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship." *Cornell v. CF Center, LLC*, 410 F.App'x 265, 267 (11th Cir. 2011) (*quoting Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986)); *Chao v. A-One Medical Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003) (same).

was a registered nurse who worked at the UMass Memorial Medical
Center ("UMass").  She brought an FLSA collective action on
behalf of 13,000 similarly situated hourly employees against
UMass, its subsidiary medical facilities, and individual
corporate officers, which she alleged were "related
organizations with common membership, governing bodies,
trustees, officers, and benefit plans," that had a centralized
payroll system, centralized website, and system-wide employee-
benefit plans, all overseen by a single Board of Trustees.
Cavallaro alleged that the multiple defendants failed to
compensate plaintiff and the collective for hours worked.
Cavallaro did not allege that hospitals other than UMass
employed her, but alleged that they were part of a single,
integrated enterprise, and thus constituted a "joint employer"
who is liable under the FLSA.  *Id.* at **2-3.

The court found that plaintiff lacked standing because she
failed to satisfy the traceability and redressability
requirements.  *Id.* at *4.  The court applied the *Bonnette*
factors to determine whether the other hospitals were her
"employer."  The court found that plaintiff's complaint provided
no basis for finding that an employer-employee relationship
existed and therefore plaintiff lacked standing to assert claims
against all the corporate defendants except UMass, her actual
employer.  *Id.* at *8.

Similar to *Cavallaro*, Plaintiffs allege that a multi-entity enterprise is operating as a cohesive unit whose policies have violated the FLSA. But the Plaintiffs in this case have the same fatal flaw as Ms. Cavallaro: they have not demonstrated the required employer-employee relationship necessary to establish that their injuries are fairly traceable to the Corporate Defendants, nor that a favorable decision against the Corporate Defendants would redress Plaintiffs' alleged injuries. *Cavallaro*, 2013 WL 360405, at *4 ("Inclusion of class allegations does not relieve a plaintiff of the requirement that she allege that she personally suffered an injury, fairly traceable to the challenged action of the defendants.") (*citing Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Nor can Plaintiffs bring suit against the other Guapo's based on the composition of a future collective. Plaintiffs worked only at the Gaithersburg Guapo's, but are bringing an FLSA collective action on behalf of all "tipped employees" employed by the five Guapo's corporations. Presumably, the other four Guapo's corporations would be the FSLA "employer" of some of the putative plaintiffs. But this prediction will not satisfy the requirement that Plaintiffs *currently* demonstrate standing against all defendants. Plaintiffs cannot use putative plaintiffs to bring in Defendants that are not the employer of the named Plaintiffs under the prediction that a future

collective of uncertain composition will include employees of
these Defendant employers. *See Lucas v. BMS Enters., Inc.*, No.
3:09-CV-2159-D, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010)
(in an FLSA case, "[P]laintiffs allege standing to sue the . . .
defendants on the basis that members of the putative class were
employed by those defendants, and accordingly suffered the same
injury as did plaintiffs.   That basis is inadequate to allege
standing."); *see also Pashby v. Delia*, 709 F.3d 307, 316 (4th
Cir. 2013) ("When the case is a class action lawsuit, the named
class representatives 'must allege and show that they personally
have been injured, not that injury has been suffered by other,
unidentified members of the class to which they belong.'"
(*quoting Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982)).
Therefore, Plaintiffs lack standing as to the Corporate
Defendants and their motion to dismiss will be granted.[4]

   **B.   Individual Defendants**

   It is well settled that an individual may qualify as an
employer and face liability under the FLSA.   In *Falk v. Brennan*,
the Supreme Court found that an individual qualified as an
"employer" under the FLSA because the defendant had extensive
managerial responsibilities and "substantial control of the

---

   [4] Because of the similarities between the FLSA and the MWHL,
the MWHL claim "stands or falls on the success of their claim
under the FLSA."   *Turner*, 292 F.Supp.2d at 744 (D.Md. 2003).
Therefore, Plaintiffs' MWHL claim against the Corporate
Defendants will also be dismissed.

terms and conditions of the work of [plaintiff] employees." 414 U.S. 190, 195 (1973); *see also Brock v. Hamad*, 867 F.2d 804, 808 n.6 (4th Cir. 1989) (finding a manager was liable for FLSA violations as an "employer" because "he hired and directed the employees who worked for the enterprise."); *Pearson v. Prof'l 50 States Protection, LLC*, No. RDB-09-3232, 2010 WL 4225533, at *4 (D.Md. Oct. 26, 2010) (collecting cases). As in the corporate employer context, "courts generally look at the 'economic reality' of an individual's status in the workplace before determining liability." *Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 890 (D.Md. 2011) (*citing Schultz*, 466 F.3d at 304; *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). This "economic reality" includes a number of factors, "such as the person's job description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship." *Gionfriddo*, 769 F.Supp.2d at 890 (*citing Baystate Alt. Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998)).

Courts in this district have also applied the *Bonnette* factors to determine whether an individual constitutes an "employer." *See Iraheta v. Lam Yuen, LLC*, No. DKC-12-1426, 2012 WL 5995689, at *3 (D.Md. Nov. 29, 2012); *Khalili*, 2011 WL 231793, at *2. No single factor is dispositive; rather, the totality of the circumstances must be considered. *See*, *e.g.,*

*Speert v. Proficio Mortg. Ventures, LLC,* No. JKB–10–718, 2011 WL 2417133, at *3 (D.Md. June 11, 2011). "An individual's status as a high-level corporate shareholder or officer does not automatically impart 'employer' liability to that individual, as individual liability 'is dictated by the economic reality of the employment relationship.'" *Caseres*, 2012 WL 5250561, at *3 (*quoting Pearson*, 2010 WL 4225533, at *4).

In their complaint, Plaintiffs allege that Hector Rincon "was at all times during Plaintiffs' employment period . . . the President and primary owner of the Guapo Restaurants." (ECF No. 25 ¶ 10). He is alleged to operate and control all Guapo's restaurants as the family patriarch and common substantial owner. (*Id.* ¶ 16). It is further alleged that Mr. Rincon had: "the power to hire, fire, suspend, and otherwise discipline Plaintiffs"; "the power to control the work schedule of Plaintiffs"; and "set and determined or had the power to set the rate and method of pay of Plaintiffs." (*Id.* ¶ 10). The complaint alleges that he is ultimately responsible for the business decisions made at all Guapo's restaurants and is assisted to this end by family members including Hector Rincon, Jr. (*Id.* ¶ 17). "Hector Rincon, Sr. and the Rincon family cabal, together control and otherwise exert total influence over all Guapo's." (*Id.* ¶ 18).

In regards to Hector Rincon, Jr., Plaintiffs allege that he is co-owner and manager of the Gaithersburg Guapo's and that he has the same powers as his father to discipline, control work schedules, and set rate and method of pay, but only at the Gaithersburg Guapo's. (*Id.* ¶ 11). Other than these allegations, Plaintiffs do not make any specific allegations with respect to actions undertaken by Hector Rincon and Hector Rincon, Jr. in their individual capacities.

The remainder of the complaint makes the following allegations of FLSA violations against all Defendants as a collective: failing to provide employees proper notice of the fact that Defendants were taking a tip credit and thereby impermissibly compensating Plaintiffs less than the minimum wage; and failing to pay overtime for hours worked in excess of forty (40) per week. (*Id.* ¶¶ 52-58).

Viewing the complaint in the light most favorable to Plaintiff, it will be presumed that these allegations against the Defendants collective apply equally to Hector Rincon and Hector Rincon, Jr. in their individual capacities. *See Iraheta*, 2012 WL 5995689, at *3 (in ruling on a Rule 12(b)(6) motion seeking dismissal of an individual FLSA defendant, court will presume that all allegations made against defendants collectively also applies equally to individual defendants); *Caseres*, 2012 WL 5250561, at *4-5 (same); *Prof'l 50 States*

*Protection, LLC*, 2010 WL 4225533, at *4 (same). Construed as such, these allegations state a plausible claim for relief that Hector Rincon and Hector Rincon, Jr. are individually liable as "employers" for violating the overtime and minimum wage provisions of the FLSA and the MWHL. Thus, Defendants' motion will be denied to the extent it seeks dismissal of the individual defendants.

### C. Protective Order

As the court is dismissing all of Plaintiffs' claims against the Corporate Defendants, Defendants' motion for a protective order to preclude Plaintiffs from taking a Rule 30(b)(6) deposition of Guapo's Bethesda, Inc.; Guapo's Restaurant, Inc.; Guapo's of Fair Lakes, Inc.; and Guapo's of Virginia, Inc. will be granted.

## V. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted in part and denied in part. The motion for a protective order will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
